John Lamb, Administrator of Estate of Joseph Wesley Lamb, deceased, Appellee, v. Kerrens-Donnewald Coal Company, Appellant.

1.  MASTER AND SERVANT—*evidence competent to rebut charge of incompetency.*  Proof being offered that a complaint had been made to the master indicating a servant's incompetency, it is error to exclude evidence offered by the master as to the result of an investigation of such complaint.

2.  EVIDENCE—*as to what expert testimony incompetent.*  Expert testimony is incompetent as to the general character for competency of a mule driver.

3.  EVIDENCE—*res gestæ; rule defined.*  Statements to be a part of the *res gestæ* must be a part of the transaction which they explain.  Statements or declarations must be so connected with the transaction which they explain that they form one of the characteristics of the transaction or form with it one continuous transaction.

Action in case for death caused by alleged wrongful act.  Appeal from the Circuit Court of Madison county; the Hon. JAMES E. DUNNEGAN, Judge, presiding.  Heard in this court at the August term, 1907.  Reversed and remanded.  Opinion filed March 18, 1908.

WISE & McNULTY, for appellant.

C. H. BURTON, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case in the Circuit Court of Madison county by appellee against appellant to recover for the death of appellee's intestate while engaged in the service of appellant as a track layer in its coal mine.  Trial by jury.  Verdict and judgment in favor of appellee for $2,500.

The declaration charges that appellant had in its employ an incompetent and unskillful driver, known by it to be such, and that upon the occasion of the injury causing the death of appellee's intestate, this driver negligently and unskillfully drove a mule hitched to a car so that it collided with rails on a car in use by appellee's intestate in the performance of his work as a track layer, thereby crushing him against a post and causing his death, and that on the occasion and at the time of his injury he was in the discharge of his duty and in the exercise of due care and caution for his own safety.

Appellant's counsel urge a reversal of the judgment in this case upon four grounds, viz.: That there is no evidence tending to prove the mule in charge of appellant's driver was either negligently or unskillfully driven on the occasion of the injury to appellee's intestate, nor any evidence tending to prove that said intestate was exercising ordinary care and caution for his own safety; that the verdict is manifestly against the weight of the evidence; that the damages are excessive, and that the trial court erred in its rulings as to the admission and rejection of evidence.

We are of opinion that counsel's first ground is untenable. To our minds the state of evidence disclosed is such that a court would not be warranted in holding that the evidence with all reasonable inferences deducible therefrom does not tend to prove the specified allegations of appellee's declaration. As this case must be reversed for error of law and may be tried again, we will not enter into a detailed discussion of either the substance or the weight of the evidence. And as to counsel's contention that the damages are excessive, the same reason justifies us in stating only our conclusion, and that is, that under the evidence disclosed, we would not be warranted in reversing the judgment of the trial court upon that ground.

During the progress of the trial testimony was introduced by appellee showing that a complaint had

been made to the mine manager of the manner in which the driver had performed his duties on one particular occasion, as tending to prove notice to appellant of the driver's unskillfulness and incompetency. In response to this, appellant sought to prove by the mine manager that upon receiving such complaint he made an investigation, and he was asked, "what he found as a result of his investigation as to who was to blame." The court sustained an objection to this inquiry.

This was error. Appellant was not bound to accept such complaint as true and act upon it without investigation. And if proper investigation was made and the driver found to be without fault or want of skill, with respect to the particular occasion complained of, such fact would have tended to refute all damaging inferences deducible from that particular complaint.

A witness who had testified as an expert driver, was asked concerning a particular circumstance, hypothetically stated, "whether or not that character of a driver would be a reasonably safe man to act as a driver in a mine?" The witness answered, "Well, in my judgment, he isn't a safe driver." This was error. This question calls for the opinion of the witness as to the general character of the driver with respect to his competency and skill. In such cases the question should be limited to the propriety and skillfulness of his conduct on the particular occasion. In this case it would be error to permit any hypothetical question based upon this circumstance, for the reason that the circumstance upon which the hypothetical question was based related to the moving of a mining machine, and we are of opinion that there is not such similarity between the kind of work and the ordinary work of hauling coal in an entry, as was the case on the occasion of intestate's injury, to warrant the admission of any answer an expert could make to any question that could be based upon that circumstance.

When the driver's car collided with the rails on the

car in use by the intestate, the driver fell over the right hand side of the car; got up, saw intestate lying on the left hand side, and the intestate said to him, that "he could not get out of the way soon enough, he got caught between the prop and the rail." The driver then left the intestate and went to find the assistant mine manager and on his way met James Camp. He found the assistant manager in the room of Charles Albrecht. The driver, Albrecht and Camp then went to the place where the intestate was lying, and the intestate then said to them that the driver "had run into him with his trip," and that "he hollered at the driver to stop, but that he did not stop." Appellant produced the driver as a witness and the court permitted appellee to prove the first statement, by him, as a part of the cross-examination, and permitted appellee to prove the second statement, by Camp and Albrecht.

Counsel for appellant insist this was error. As to the first statement, we are of opinion that it was within the limit of proper cross-examination and was clearly *res gestae*. As to the second statement, we agree with counsel in their contention that it was not *res gestae* and that the trial court erred in admitting it. Neither Camp nor Albrecht was present when the collision occurred and neither of them saw any part of it. The driver had spoken with the intestate and had left the scene, found the assistant manager and returned to the place of injury, having traveled four or five hundred feet, and found the injured man lying on the gob four or five feet from the track. A statement made by him at that time and under those circumstances was not *res gestae;* it was narration, and must be treated as a mere self-serving statement. Statements to be *res gestae* "must be a part of the transaction which they explain. The statements or declarations must be so connected with the transaction which they explain that they form one of the characteristics of the transaction or form with it one continuous transaction."

Counsel for appellee states that not more than two or three minutes had elapsed between the time of the collision and the time the second statement was made and he cites cases in which statements and declarations have been held to be *res gestae,* where a longer time had elapsed than in this case. But in those cases the conditions were different. What is *res gestae* cannot usually be determined alone by counting the number of seconds or minutes that intervened between the physical acts of a transaction and a statement or declaration.

For the errors above noted the judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*